[Dkt. Ent. 18]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JOHNATHAN ROBINS, | |
| Plaintiff, | Civil No. 14-115 (RMB/JS) |
| v. | **OPINION** |
| YOLANDA ROBINS-MCCAFFERTY, et al., | |
| Defendants. | |

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a purported motion for reconsideration by Plaintiff Johnathan Robins ("Plaintiff") [Dkt. No. 18.][1]  Because Plaintiff has demonstrated an intent to pursue this matter, as instructed by the Court, the next step is to screen Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]

---

[1] The Court previously administratively terminated the matter after Plaintiff's conduct suggested he sought to no longer pursue the matter.  The Court instructed Plaintiff to confirm in a letter to the Court if he desired to continue pursuing this case.  [Dkt. No. 16.]  On September 2, 2015 Plaintiff contacted the Court, in the form of this motion, manifesting his desire to continue with the matter.

[2] Plaintiff has properly filed an application to proceed in forma pauperis before this Court.  [Dkt. No. 19.]  The record before this Court demonstrates Plaintiff's right to proceed in forma pauperis, and accordingly, the request is granted.

I.      **FACTUAL BACKGROUND**

According to the Second Amended Complaint, this action arises out of a dispute over Defendants' conduct during and after the administration of Plaintiff's mother's estate and the sale of her house.  Plaintiff owned the house in which his mother resided together with Defendant Yolanda Robins-McCafferty ("Robins-McCafferty").  Plaintiff alleges that his mother created a will in 2004 that divided her estate evenly between Plaintiff and Robins-McCafferty.  (Compl. at 4.)  After Plaintiff's mother died in 2010, Robins-McCafferty was appointed executor of the estate and she hired Defendant Anthony Mallace ("Mallace", and with Robins-McCafferty, "Defendants") to represent her in probate court in the Superior Court of New Jersey, Burlington County.  (Id. at 3.)  The estate consisted of Plaintiff's mother's life insurance policy, pension benefits, personal possessions, and bank accounts.  (Id. at 4.)

In March 2010, Plaintiff was convicted of an unnamed offense and incarcerated in Pennsylvania.  (Id. at 5.)  Since June 2010, Plaintiff claims Robins-McCafferty has refused to contact him.  (Id. at 6.)  He alleges that Robins-McCafferty breached a fiduciary duty to him by wasting estate assets through self-dealing, charging the estate for flights dating back to 2008, and failing to provide him with any portion of the estate. (Id.)

Plaintiff also alleges that Mallace was appointed by Burlington County Court to represent him in the sale of the home his mother lived in, which he owned with Robins-McCafferty. (Id. at 7.) Plaintiff states that this appointment was conducted over his objection, as Mallace was then also representing Robins-McCafferty. (Id.) Thereafter, Plaintiff alleges that Mallace refused to contact him about the dispensation of the funds from the sale of Plaintiff's mother's house and he has not heard from Mallace since April 2012. (Id.)

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must preliminarily screen in forma pauperis filings, and must dismiss any filing that is frivolous or malicious, fails to state claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Id.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain:

(1) [A] short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) [A] short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) [A] demand for the relief sought, which may include relief in the alternative or different types of relief.

"[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 311 (3d Cir. 2009). However, in screening a complaint to verify whether it meets this standard, this Court is mindful of the requirement that pro se pleadings must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. Ed 652 (1972).[3]

Turning to the claims Plaintiff asserts, "[a] claim for breach of fiduciary duty . . . requires that a plaintiff show (1) the existence of a fiduciary duty, (2) a breach of that duty to defendant, and (3) resulting damages." Miller v. Butler, 2014 WL 171184, at *3 (D.N.J. April 30, 2014). "A fiduciary relationship arises under New Jersey law when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. A fiduciary is charged with a duty of loyalty and a duty to exercise reasonable skill and care on behalf of the person to

---

[3] This Court twice previously screened and dismissed Plaintiff's complaints because his claims were non-viable. [Dkt. Nos. 4, 13.] In its July 19, 2015 Order screening and dismissing Plaintiff's claims, the Court permitted Plaintiff to file an Amended Complaint containing his breach of fiduciary duty claims against Robins-McCafferty and Mallace. [Dkt. No. 13.] Thereafter, on August 28, 2015, Plaintiff filed an Amended Complaint asserting breach of fiduciary duty claims against the Defendants for their conduct in the administration of his mother's estate and in representing him.

4

whose benefit the fiduciary acts. The fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship." <u>Indus. Mar. Carriers (Bahamas), Inc. v. Miller</u>, 399 F. App'x 704, 710 (3d Cir. 2010). Plaintiff brings breach of fiduciary duty claims against both Robins-McCafferty, the executor of his mother's estate, and Mallace, Robins-MacCafferty's attorney and Mr. Robins' attorney as appointed by Probate Court.

The Court holds that Plaintiff has sufficiently stated a claim against Robins-McCafferty. Plaintiff alleges that Robins-McCafferty "was appointed executor by the state court of Robins' estate." <u>In re Estate of Madden</u>, 2010 WL 4121302, at *12 (App. Div. Aug. 18, 2010) ("An executor owes a fiduciary duty to beneficiaries of the estate . . . ."). Plaintiff alleges that Robins-McCafferty breached her fiduciary duty to him by "wasting estate assets, self-dealing, refusal to provide statements of assets of estate and refusal to administer any assets to Plaintiff." (Compl. at 2.) Plaintiff further details his allegations against Robins-McCafferty, alleging instances of misuse of the estate's assets. (Compl. at 6-7.) Ultimately, Plaintiff alleges he has received no disposition of assets from the estate and that Robins-McCafferty has not contacted him since June 2010. (<u>Id.</u> at 6.) Given the facts alleged,

5

Plaintiff has stated a claim for breach of fiduciary duty sufficient to survive screening.

Regarding the claim for breach of fiduciary duty against his attorney, Plaintiff's allegations also survive screening. An attorney is a fiduciary of his client. Estate of Spencer v. Gavin, 2008 WL 1899196, at *10 (App. Div. Apr. 23, 2008) ("The attorney-client relationship embodies the concept of the client's trust in his fiduciary, the attorney."). Here, Plaintiff alleges that despite the fiduciary obligations owed to him by Mallace, his attorney "refused to contact Plaintiff about the whereabouts of the funds from sale of residence after many attempts by Plaintiff; Mallace just disappeared with the money and Plaintiff has not heard from him since April 2012." (Compl. at 7.) These allegations show the existence of a fiduciary relationship, breach, and resulting damages. As such, Plaintiff has stated a valid claim in this regard.[4]

### III. APPOINTMENT OF PRO BONO COUNSEL

The Court now addresses, sua sponte, whether counsel should be appointed to represent Plaintiff in this matter. See Tabron

---

[4] The Court notes that New Jersey law requires Plaintiff to procure an attorney-signed affidavit of merit to pursue his claim against Mallace. Plaintiff has requested this Court appoint an attorney for such purposes. (Compl. at 3.) Upon consideration of the issue, the Court will appoint an attorney to assist Plaintiff in pursuing his claims pursuant to 28 U.S.C. § 1915(e)(1) and in procuring this affidavit. See infra § III.

6

v. Grace, 6 F.3d 147, 156 (3d Cir. 1993); Holiday v. Doe No. 1, Civ. No. 11-2915 (RMB), 2012 WL 130227, at *1 (D.N.J. Jan. 17, 2012).[5]

As the Third Circuit has made clear, "indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). However, Congress has granted district courts the authority to request appointed counsel for civil litigants pursuant to 28 U.S.C. § 1915(e)(1). Id. (explaining that "[t]he court may request an attorney to represent any person unable to afford counsel"). Accordingly, this Court has "broad discretion" to determine whether appointment of counsel in this case would be appropriate. Montgomery, 294 F.3d at 498.

In evaluating whether an attorney should be requested to appoint a Plaintiff, the Court examines the merits of a plaintiff's claim to determine if it has "some arguable merit in fact and law." See Tunnell v. Gardell, 2003 WL 1463394, at *1 (D. Del. Mar. 14, 2003). If the Court determines the claim has factual and legal merit, then the Court examines: (1) a plaintiff's ability to present his or her own case; (2) the

---

[5] The Court raises the issue of appointment now because pursuant to N.J. Stat. 2A:53A-27, plaintiffs are obligated to secure an affidavit of merit within sixty days of the filing of an answer to a complaint by a defendant. Id. This period may only be extended one time for an additional sixty days. Id. Thus, a lawyer's prompt attention will be important.

complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of a plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require testimony of expert witness; and (6) whether a plaintiff can attain and afford counsel on his or her own behalf.  See id. (citing Parham, 126 F.3d at 457-58; Tabron, 6 F.3d at 155-56, 157 n.5).[6]

In the instant case, while the Court has only screened the complaint filed by Plaintiff, it does appear to possess legal and factual merit.  See supra § II; See also Muhammad v. Dept. of Corrections, 2007 WL 1695702, at *3 (D.N.J. June 12, 2006) (finding legal merit for appointment of pro bono counsel after screening of complaint pursuant to § 1915(e)(2)(b)).  Plaintiff has engaged in several attempts to sufficiently state his claims to survive screening and has, after direction from the Court, been able to successfully demonstrate a set of facts that, if proven, could entitle him to relief.

Given the legal merit of the case, the Court now turns to the first factor for consideration in determining whether to

---

[6] A court should also consider other factors in its analysis, "such as the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time."  Holiday, 2012 WL 130227, at *1.

appoint pro bono counsel—Plaintiff's ability to present his own case. Plaintiff has thus far been able to respond to orders from this Court and file amendments to his allegations as needed. See Edwards v. Univ. of Medicine, 2015 WL 333303, at *1 (D.N.J. Jan.26, 2015) ("[P]laintiff has had access to this Court as demonstrated by his numerous filings"). That said, from this point forward, Plaintiff will have to secure an affidavit of merit to proceed with his claims against Mallace and navigate procurement of international service of Robins-McCafferty. Performing these undertakings from prison absent the assistance of an attorney would prove exceedingly difficult. See Krider v. Heron, Civ. No. 06-3231(NLH/JS), 2007 WL 2300709, at *2 (D.N.J. Aug. 3, 2007) ("[I]f the plaintiff is incarcerated, the restraints placed upon him by virtue of his confinement should be considered in determining his ability to represent himself."). This factor, which is arguably the most significant, Montgomery v. Pinchak, 294 F.3d 492, 501 (3d Cir. 2002), weighs heavily in favor of the appointment of pro bono counsel.

Second, the complexity of the legal issues does not seem prohibitive at this juncture. The legal issues concerning a breach of fiduciary duty in the administration of his mother's estate seem manageable for a pro se party. To this point, Plaintiff has been able to engage with the Court in several

9

iterations of his claims, including remedying legal infirmities as they've arisen. [Dkt. Nos. 1-14.]  Of course, this does not necessarily guarantee Plaintiff will be able to follow through on litigating these claims on his own. Edwards, 2015 WL 333303, at *2 ("Simplicity in the allegation does not translate into simplicity in the presentation of the claim" (quoting Montgomery v. Pinchak, 294 F.3d 492, 502 (3d Cir. 2002)).  Nevertheless, the Court is persuaded at this juncture that the complexity of the legal issues in this case is not prohibitive. Accordingly, the second factor weighs against appointing counsel.

Third, the factual investigation required to bring Plaintiff's claims weighs slightly in favor of appointing an attorney.  Courts have held that the fact of incarceration is not an immediate bar to the ability to conduct factual discovery. Dippolito v. U.S., 2015 WL 1104813, at *3 (D.N.J. Mar. 11, 2015).  Nevertheless, because Robins-McCafferty lives abroad, the Court finds that the challenge of conducting any necessary depositions and developing the factual record from prison will prove difficult, if not impossible, for Plaintiff on his own.  As such, this factor weighs, if only slightly, in favor of appointing pro bono counsel.

Fourth, while it is difficult at this early stage to discern, this case may ultimately turn on a credibility determination between the Plaintiff and the two defendants.

10

"Though most cases turn on credibility determinations, this factor weighs towards appointing counsel if the case is 'solely a swearing contest.'" Id. (quoting Parham, 126 F.3d 454, 460 (3d Cir. 1997). It is not clear at this juncture whether the case will amount to solely swearing contest. What is clear is that, at some point, the case may turn on Plaintiff's credibility regarding his allegations of his interactions with Robins-McCafferty and Mallace. But, determining whether that comes to pass is speculative. Accordingly, at this somewhat early stage this factor neither weighs in favor or against appointing pro bono counsel.

Fifth, this case does not appear as though it will require expert witnesses. As such, this factor weighs against the appointment of counsel.

Sixth, Plaintiff's inability to obtain and afford counsel on his own weighs in favor of appointing counsel. Plaintiff is incarcerated, limiting his income, and has already been granted permission to proceed in forma pauperis by this Court. Accordingly, this factor weighs in favor of appointing counsel. See Dippolito, 2015 WL 1104813, at *4 (D.N.J. Mar. 11, 2015).

In light of the above, while it is somewhat of a close call, this Court finds that the Tabron factors weigh in favor of appointing counsel for the purpose of developing the factual record and securing an affidavit of merit, if warranted. Should

11

the investigation of the appointed attorney reveal the Court has misperceived the merit in the underlying allegations, the appointment shall not prevent a motion to withdraw as counsel by the attorney.[7]  See Davidson v. Tan, Civ. A. No. 08-2679, 2011 WL 3841088, at *1 (D.N.J. Aug. 25, 2011) (permitting pro bono counsel to withdraw when attorney, after evaluation, determined "Plaintiff's claims were baseless.").

An appropriate order follows.


DATED: November 9, 2015

                                            s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            UNITED STATES DISTRICT JUDGE

---

[7] The Court also notes that the Plaintiff is currently incarcerated in Bellefonte, PA.  Given the great distance, it is anticipated that the representation of the appointed pro bono counsel may be carried out best and most efficiently by use of telephone or videoconference.